**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

SAN KHUAN SAETEURN,

        Plaintiff,

        v.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No.  2:25-CV-1338-WBS-DMC

FINDINGS AND RECOMMENDATIONS

Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). Plaintiff, who is proceeding with retained counsel, brings this action for judicial review of a final decision of the Commissioner of Social Security under 42 U.S.C. § 405(g).  Pending before the Court are the parties' briefs on the merits, ECF Nos. 11 and 13.

The Court reviews the Commissioner's final decision to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. See Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence" is more than a mere scintilla, but less than a preponderance.  See Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996).  It is ". . . such evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 402 (1971).  The record as a whole,

1

including both the evidence that supports and detracts from the Commissioner's conclusion, must be considered and weighed. See Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986); Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The Court may not affirm the Commissioner's decision simply by isolating a specific quantum of supporting evidence. See Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive. See Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Therefore, where the evidence is susceptible to more than one rational interpretation, one of which supports the Commissioner's decision, the decision must be affirmed, see Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

For the reasons discussed below, the Court recommends the Commissioner's final decision be affirmed.

## I.  THE DISABILITY EVALUATION PROCESS

To achieve uniformity of decisions, the Commissioner employs a five-step sequential evaluation process to determine whether a claimant is disabled. See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).  The sequential evaluation proceeds as follows:

Step 1    Determination whether the claimant is engaged in substantial gainful activity; if so, the claimant is presumed not disabled and the claim is denied;

Step 2    If the claimant is not engaged in substantial gainful activity, determination whether the claimant has a severe impairment; if not, the claimant is presumed not disabled and the claim is denied;

Step 3    If the claimant has one or more severe impairments, determination whether any such severe impairment meets or medically equals an impairment listed in the regulations; if the claimant has such an impairment, the claimant is presumed disabled and the claim is granted;

/ / /

2

Step 4     If the claimant's impairment is not listed in the regulations, determination whether the impairment prevents the claimant from performing past work in light of the claimant's residual functional capacity; if not, the claimant is presumed not disabled and the claim is denied;

Step 5     If the impairment prevents the claimant from performing past work, determination whether, in light of the claimant's residual functional capacity, the claimant can engage in other types of substantial gainful work that exist in the national economy; if so, the claimant is not disabled and the claim is denied.

See 20 C.F.R. §§ 404.1520 (a)-(f) and 416.920(a)-(f).

To qualify for benefits, the claimant must establish the inability to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted, or can be expected to last, a continuous period of not less than 12 months. See 42 U.S.C. § 1382c(a)(3)(A). The claimant must provide evidence of a physical or mental impairment of such severity the claimant is unable to engage in previous work and cannot, considering the claimant's age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. See Quang Van Han v. Bower, 882 F.2d 1453, 1456 (9th Cir. 1989). The claimant has the initial burden of proving the existence of a disability. See Terry v. Sullivan, 903 F.2d 1273, 1275 (9th Cir. 1990).

The claimant establishes a prima facie case by showing that a physical or mental impairment prevents the claimant from engaging in previous work. See Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984); 20 C.F.R. §§ 404.1520(f) and 416.920(f). If the claimant establishes a prima facie case, the burden then shifts to the Commissioner to show the claimant can perform other work existing in the national economy. See Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988); Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); Hammock v. Bowen, 867 F.2d 1209, 1212-1213 (9th Cir. 1989).

/ / /

/ / /

/ / /

/ / /

3

## II.  THE COMMISSIONER'S FINDINGS

Plaintiff applied for social security claiming disability since February 24, 2018. See CAR 572.[1]  Following a remand issued by this Court on July 13, 2023, pursuant to the parties' stipulation, the Appeals Council ordered the matter reheard by an Administrative Law Judge (ALJ).  See id. at 658-60.  An administrative hearing was held on January 4, 2024, before ALJ Eva Chan.  In a March 13, 2024, decision, the ALJ concluded Plaintiff is not disabled based on the following relevant findings:

1.   The claimant has the following severe impairment(s): asthma, lumbar degenerative disc disease, and an adjustment disorder with anxiety and depressed mood;

2.   The claimant does not have an impairment or combination of impairments that meets or medically equals an impairment listed in the regulations;

3.   The claimant has the following residual functional capacity:  the claimant can perform medium work; the claimant can frequently climb ramps stairs, ladders, ropes, and scaffolds; the claimant can frequently stoop and crouch; the claimant should avoid exposure to dusts, odors, fumes, gases, poor ventilation, and other pulmonary irritants; the claimant should avoid more than occasional exposure to work at heights, to moving machinery, and other workplace hazards; the claimant is limited to understanding, remembering, and carrying out simple instructions; the claimant can occasionally interact with coworkers and never interact with the public;

4.   Considering the claimant's age, education, work experience, residual functional capacity, and vocational expert testimony, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

See id. at 575-85.

After the Appeals Council declined review on March 7, 2025, this appeal followed.

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1]   Citations are the to the Certified Administrative Record (CAR) lodged on July 2, 2025, ECF No. 9.

### III.  DISCUSSION

In his opening brief, Plaintiff argues: (1) the ALJ failed to properly evaluate the opinions of treating physician, Dr. Zhang; and (2) the ALJ failed to properly evaluate Plaintiff's subjective statements and testimony.  See ECF No. 11.

### A.    Evaluation of Medical Opinions Offered by Dr. Zhang

"The ALJ must consider all medical opinion evidence."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527(b)).  The ALJ errs by not explicitly rejecting a medical opinion.  See Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014).  The ALJ also errs by failing to set forth sufficient reasons for crediting one medical opinion over another.  See id.

Under the regulations, only "licensed physicians and certain qualified specialists" are considered acceptable medical sources.  20 C.F.R. § 404.1513(a); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012).  Where the acceptable medical source opinion is based on an examination, the ". . . physician's opinion alone constitutes substantial evidence, because it rests on his own independent examination of the claimant."  Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).  The opinions of non-examining professionals may also constitute substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.  See Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  Social workers are not considered an acceptable medical source.  See Turner v. Comm'r of Soc. Sec. Admin., 613 F.3d 1217, 1223-24 (9th Cir. 2010).  Nurse practitioners and physician assistants also are not acceptable medical sources.  See Dale v. Colvin, 823 F.3d 941, 943 (9th Cir. 2016).  Opinions from "other sources" such as nurse practitioners, physician assistants, and social workers may be discounted provided the ALJ provides reasons germane to each source for doing so.  See Popa v. Berryhill, 872 F.3d 901, 906 (9th Cir. 2017), but see Revels v. Berryhill, 874 F.3d 648, 655 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(f)(1) and describing circumstance when opinions from "other sources" may be considered acceptable medical opinions).

/ / /

/ / /

The Commissioner has promulgated revised regulations concerning how ALJs must evaluate medical opinions for claims filed, as here, on or after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c. These regulations supersede prior caselaw establishing the treating physician rule which established a hierarchy of weight to be given medical opinions depending on their source. See id.; see also Jones v. Saul, 2021 WL 620475, at *9 (E.D. Cal. Feb. 17, 2021) ("In sum, because (1) the 2017 regulations are not arbitrary and capricious or manifestly contrary to statute, (2) the prior judicial construction was not mandated by the governing statutory language to the exclusion of a differing agency interpretation, and (3) the [treating-physician rule] is inconsistent with the new regulation, the court concludes that the 2017 regulations effectively displace or override [prior caselaw.]"). Thus, ALJs are no longer required to "defer to or give any specific evidentiary weight to" treating physicians over medical opinions from other sources. See Carr v. Comm'r of Soc. Sec., 2021 WL 1721692, at *7 (E.D. Cal. Apr. 30, 2021).

Under the revised regulations, the ALJ must evaluate opinions and prior administrative medical findings by considering their "persuasiveness." See Buethe v. Comm'r of Soc. Sec., 2021 WL 1966202, at *3 (E.D. Cal, May 17, 2021) (citing 20 C.F.R. § 404.1520c(a)). In determining how persuasive the opinion of a medical source is, an ALJ must consider the following factors: supportability, consistency, treatment relationship, specialization, and "other factors." See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(b), (c)(1)-(5)). Despite a requirement to consider all factors, the ALJ's duty to articulate a rationale for each factor varies. See Buethe, 2021 WL 1966202, at *3 (citing § 404.1520c(a)-(b)).

Specifically, in all cases the ALJ must at least "explain how [she] considered the supportability and consistency factors," as they are "the most important factors." See Buethe, 2021 WL 1966202, at *4 (citing § 404.1520c(b)(2)). For supportability, the regulations state: "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive [the opinion] will be." See Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(1)). "For consistency, the regulations state: '[t]he more consistent a

6

medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive [the opinion] will be.'" Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(c)(2)).  "The ALJ is required to articulate findings on the remaining factors (relationship with claimant, specialization, and 'other') only when 'two or more medical opinions or prior administrative medical findings about the same issue' are 'not exactly the same,' and both are 'equally well-supported [and] consistent with the record.'"  Buethe, 2021 WL 1966202, at *4 (quoting § 404.1520c(b)(2) & (3)).

In assessing the medical opinions, the ALJ considered opinions from the following sources:  (1) Dr. Card, who performed a consultative psychological evaluation; (2) Dr. Wagner, who performed a consultative physical examination; (3) Drs. Bugg, Dale, Klein, and Abrahimi, all of whom were consultative non-examining doctors; and (4) Dr. Zhang, Plaintiff's treating physician.  See CAR 580-82.  As to Dr. Zhang, the ALJ stated:

> The undersigned finds the opinion of Steve Zhang, M.D., unpersuasive. Doctor Zhang opined that the claimant's impairments would limit him to walking 1-2 city blocks before needing to rest, would limit the claimant to standing and walking for about 30 minutes at a time for a total of less than 2 hours out of an 8-hour workday (Ex. B5F/2). He also opined that the claimant could sit for about 4 hours total in an 8-hour workday, for more than two hours at a time (Id.). Doctor Zhang also opined that the claimant would need to alternate from sitting to standing periodically throughout a workday and would need to walk every sixty minutes for ten minutes at a time (Id. at 3). He felt the claimant should use a cane to assist with his ability to ambulate due to pain and imbalance (Id.). Doctor Zhang limited the claimant to only occasionally lifting and carrying up to ten pounds and rarely twisting, stooping or climbing stairs (Id.). He felt that the claimant should never crouch or squat or climb ladders (Id.). Doctor Zhang felt that the claimant would have no limitations reaching, handling or fingering, but felt that the claimant would be "off-task" from work for 10% of the workday (Id. at 4). He opined that the claimant was limited to low stress work and would likely miss work more than four days per month (Id.). Finally, Doctor Zhang opined that the claimant would need to take unscheduled breaks more than three times per day for ten minutes at a time, during which the claimant would need to lie down or sit quietly (Id. at 5). The undersigned finds that Doctor Zhang's opinions are not consistent with his own treatment records for the claimant that document that the claimant's back pain has responded well to medication (See Ex. B1F/5 where the claimant reports that he is "…able to ambulate well when he takes gabapentin and perform daily ADLs" and Doctor Zhang's assessment note that the claimant's pain is "…well controlled with gabapentin and conservative therapy such as warm pads.") The undersigned also finds that Doctor Zhang's opinion is not consistent with the other medical records in the file from other providers at Mercy

Hospital that also document that the claimant's back pain responds well to medication, including over-the-counter medications (See Ex. B7F/11-12).

CAR 581.

Plaintiff first argues that, in finding that Dr. Zhang's opinions are not consistent with the doctor's own treatment notes, the ALJ mischaracterized the evidence relating to Plaintiff's response to medication. See ECF No. 11, pgs. 6-7. Second, Plaintiff argues that, in finding Dr. Zhang's opinion unpersuasive because Plaintiff's symptoms were managed with medication, the ALJ failed to acknowledge ". . .the continued existence of Plaintiff's pain with treatment, the worsening of Plaintiff's pain, and the fact that this pain was aggravated while not attempting to sustain full-time, competitive employment." Id. at 7. Plaintiff concludes: "The ALJ failed to provide substantial evidence to support the assessment of Dr. Zhang's opinion, instead relying upon her own mischaracterizations of the record and immaterial findings to suggest that Dr. Zhang's opinion was not fully persuasive." Id.

In opposition, the Commissioner first contends that Plaintiff's argument fails to recognize that Dr. Zhang's findings are inconsistent with those of the other doctors who assessed Plaintiff's physical functionality. See ECF No. 13, pg. 9. The Commissioner also asserts that, notwithstanding Plaintiff's view of the evidence, the ALJ's interpretation of the evidence controls and must be upheld where, as here, the evidence is such that a reasonable mind might accept the ALJ's conclusion. See id. at 9-10.

The Court agrees with the Commissioner. Regarding improvement with medication, the ALJ noted that Plaintiff's back pain has "responded well" to medication. CAR 581. According to Plaintiff, medication stopped pain from radiating, but he still experienced ongoing low back pain. See ECF No. 11, pg. 6. While it may be true that Plaintiff continued to experience back pain despite medication, a reasonable mind could accept the ALJ's analysis that improvement with medication was shown by a lack of radiating pain. Thus, the ALJ's conclusion was supported by substantial evidence. Similarly, a reasonable mind could conclude that medication resulted in management of Plaintiff's pain to the extent it no longer radiated, further supporting the ALJ's analysis. Finally, as the Commissioner notes, Plaintiff has completely

8

ignored the inconsistency of Dr. Zhang's findings with those of the other doctors who assessed Plaintiff's physical functionality – Drs. Wagner, Bugg, and Dale.  Each of these doctors rendered opinions contrary to Dr. Zhang's, finding that Plaintiff is capable of the exertional demands of medium work as determined by the ALJ.  See CAR 579-82.

### B.   Evaluation of Plaintiff's Subjective Statements and Testimony

The Commissioner determines the weight to be given to a claimant's own statements and testimony, and the Court defers to the Commissioner's discretion if the Commissioner used the proper process and provided proper reasons.  See Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996).  An explicit finding must be supported by specific, cogent reasons.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990).  General findings are insufficient.  See Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995).  Rather, the Commissioner must identify what testimony is not afforded weight and what evidence undermines the testimony.  See id. Moreover, unless there is affirmative evidence in the record of malingering, the Commissioner's reasons for rejecting testimony as not credible must be "clear and convincing."  See id.; see also Carmickle v. Commissioner, 533 F.3d 1155, 1160 (9th Cir. 2008) (citing Lingenfelter v Astrue, 504 F.3d 1028, 1936 (9th Cir. 2007), and Gregor v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006)).

If there is objective medical evidence of an underlying impairment, the Commissioner may not discredit a claimant's testimony as to the severity of symptoms merely because they are unsupported by objective medical evidence.  See Bunnell v. Sullivan, 947 F.2d 341, 347-48 (9th Cir. 1991) (en banc).  As the Ninth Circuit explained in Smolen v. Chater:

> The claimant need not produce objective medical evidence of the [symptom] itself, or the severity thereof.  Nor must the claimant produce objective medical evidence of the causal relationship between the medically determinable impairment and the symptom.  By requiring that the medical impairment "could reasonably be expected to produce" pain or another symptom, the Cotton test requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon.

> 80 F.3d 1273, 1282 (9th Cir. 1996) (referring to the test established in Cotton v. Bowen, 799 F.2d 1403 (9th Cir. 1986)).

/ / /

/ / /

9

The Commissioner may, however, consider the nature of the symptoms alleged, including aggravating factors, medication, treatment, and functional restrictions. See Bunnell, 947 F.2d at 345-47. In weighing a claimant's statements and testimony, the Commissioner may also consider: (1) the claimant's reputation for truthfulness, prior inconsistent statements, or other inconsistent testimony; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) work records; and (5) physician and third-party testimony about the nature, severity, and effect of symptoms. See Smolen, 80 F.3d at 1284 (citations omitted). It is also appropriate to consider whether the claimant cooperated during physical examinations or provided conflicting statements concerning drug and/or alcohol use. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002). If the claimant testifies as to symptoms greater than would normally be produced by a given impairment, the ALJ may disbelieve that testimony provided specific findings are made. See Carmickle, 533 F.3d at 1161 (citing Swenson v. Sullivan, 876 F.2d 683, 687 (9th Cir. 1989)).

In determining Plaintiff's residual functional capacity at Step 4, the ALJ considered Plaintiff's own subjective statements and testimony. See CAR 578-80. In doing so, the ALJ summarized Plaintiff's statements and testimony as follows:

> The claimant alleges that he is unable to work due to limitations caused by his low back pain and sciatica, severe asthma, depression, anxiety and high blood pressure. He alleged that he was unable to drive, was forgetful, did not engage in social activities and could only walk for twenty yards and lift no more than five pounds. He also alleged that he required the use of a cane to ambulate, and that this cane was prescribed by a doctor (Ex. B15E/7). He endorsed issues getting along with authority figures and issues dealing with stress (Id.).

CAR 578.

The ALJ first addressed Plaintiff's claimed need for use of an assistive device:

> The record documents that the claimant suffers from degenerative changes to his lumbar spine. The claimant reported a history of low back pain with sciatica down the back of his left leg, aggravated by prolonged standing or sitting (Ex. B1F/27). The claimant was treated with a combination of prescription and over the counter pain medications (Id.). An x-ray of the claimant's lumbar spine performed on October 4, 2018, revealed no acute fracture or dislocation and only mild degenerative changes (Ex. B1F/29). Subsequently, the claimant reported improvement in his sciatica (Id. at 24). . . .[H]e refused physical therapy (Id. at 12). Examination of the

10

claimant performed on May 4, 2018, did reveal slightly decreased muscle strength and diminished sensation in the left lower extremity resulting in a mild steppage gait on the left (Id.). Although he endorsed use of a cane to assist with his ambulation, he also reported that he did not like using it because he felt embarrassed (Id.). This indicates that the claimant did not require the use of an assistive device to ambulate. During an examination of the claimant performed on July 16, 2018, the claimant reported that his sciatica had resolved, and his back pain was now localized in his low back (Id. at 8). He reported that he was able to ambulate further than before and he otherwise reported no issues (Id.) Generally, the record indicates that the claimant was able to treat his back pain successfully with Gabapentin and heat therapy, which permitted him to ambulate well and to perform his activities of daily living (Id. at 5). An MRI of the claimant's lumbar spine performed on December 18, 2018, early and mild degenerative disc disease at L3, L4 and L5 with mild posterior bulging at L3-L4 and mild-to-moderate prolapse at L4-L5 (Ex. B8F/7). No focally obviously significant spinal or neural foraminal stenosis was identified (id. at 8).

CAR 578-79.

Next, the ALJ addressed Plaintiff's allegations concerning asthma:

Turning to the claimant's asthma, treatment records document that it was stable and treated with inhalers (See, e.g., Ex. B1F/24). The claimant was advised to avoid triggers (Id.). The claimant generally reported no shortness of breath (See Ex. B1F/8).

CAR 579.

The ALJ also specifically addressed Plaintiff's allegations relating to mental limitations:

With respect to the claimant's adjustment disorder, treatment records document that the claimant reported symptoms of depression, treated by his medical providers with medications (See Ex. B1F/22). The claimant was advised to see behavioral therapy but does not appear to have done so (Id.). The claimant has, on various occasions, endorsed and denied suicidal and homicidal ideations (Id. at 18, 19, 21). The claimant reported no issues getting along with others or concentrating (Id. at 19).

CAR 579-80.

Plaintiff argues that the ALJ's analysis is flawed because it is based on nothing more than inconsistency with the objective evidence. See ECF No. 11, pgs. 8-9. The Court does not agree. While it is true that the ALJ cited inconsistency with the objective medica evidence, the Court finds that this was not the only reason referenced in the ALJ's analysis. Specifically, the ALJ properly noted that Plaintiff's pain symptoms were well managed with conservative

11

treatment.  See Bunnell, 947 F.2d at 345-47.  The ALJ also properly observed that Plaintiff refused physical therapy.  See Smolen, 80 F.3d at 1284.  The ALJ also properly noted that Plaintiff's statements and testimony were inconsistent with other statements Plaintiff made by Plaintiff to his various doctors.  See id.  For example, Plaintiff testified that he needed to use a prescribed cane, but the objective medical evidence failed to reveal a prescription for an assistive device and Plaintiff told doctors he was able to ambulate well.  Further, though Plaintiff alleged disability due to asthma, Plaintiff also reported to his doctors that he had no shortness of breath.

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1.    Plaintiff's motion for summary judgment, ECF No. 11, be denied;

2.    Defendant's cross-motion for summary judgment, ECF No. 13, be granted; and

3.    The Commissioner's final decision be affirmed.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  April 22, 2026

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

12